IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BARBARA DENISE BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:11cv35-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. Introduction**

Plaintiff Barbara Denise Baker ("Baker") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq., and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). Pursuant

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Bakersman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A. Introduction**.  Baker was 41 years old at the time of the hearing before the ALJ, and has completed the eleventh grade.  (R. 29).  Her prior work experience includes work as a textile folder.  (R. 20).  Following the hearing, the ALJ concluded that the plaintiff has

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

severe impairments of status post lumbar fusion with fixation and obesity. (R. 16). The ALJ further concluded that Baker's hypertension was not a severe medically determinable impairment because she did not seek medical treatment for this impairment, she does not take medication for this impairment, and thus, it causes no more than a minimal limitation. (*Id*.) The ALJ also concluded that Baker's complaints regarding her right hand did not constitute a medically determinable impairment because she had not sought treatment for this condition. (*Id*.).

The ALJ found that Baker had the residual functional capacity to perform light work, and she could perform her past relevant work as a textile folder. Thus, the ALJ concluded that Baker was not disabled. (R. 20).

**B. Plaintiff's Claims**. As stated by Baker, she presents two issues for the Court's review:

1. The Commissioner's decision should be reversed because the ALJ's finding that Ms. Baker is capable of performing light work is not supported by substantial evidence.

2. The Commissioner's decision should be reversed because the ALJ erred in failing to consider the entire evidence of record when considering Ms. Baker's participation in activities of daily living to be robust, when the evidence shows that they were, in fact, very limited.

(Pl's Br., Doc. # 13 at 6).

## IV. DISCUSSION

The plaintiff raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal

standards and substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). Because the court concludes that the ALJ erred as a matter of law, this case is due to be remanded for further proceedings. The court first addresses Baker's argument regarding her residual functional capacity.

  **B. Residual Functional Capacity finding.** The ALJ determined that Baker suffers from severe impairments of post status lumbar fusion with fixation and obesity. Relying on the opinion[4] of a non-examining consultant, Paula Montgomery, the ALJ determined that Baker

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant is limited to work which will require her to: occasionally push/pull arm controls; occasionally crouch, kneel, crawl, balance and/or climb ramps/stairs; and never climb ladders, ropes, and scaffolds.

(R. 17).

  The State Agency Medical Consultant completed a physical residual functional capacity assessment in which she checked that Baker could stand and/or walk for "about 6 hours in an 8-hour workday." (R. 227). However, the consultant went on to conclude that "[b]ased on the medical evidence in file and the nature of her condition, the claimant is not expected to stand more than 2 hours in an 8 hour day. *The claimant is given a SFRC*." (R. 231) (emphasis added). Despite the assessment that Baker could not stand for more than 2 hours in an 8-hour work day, the ALJ concluded that Baker has the residual functional

---

  [4] The ALJ assigned "great weight" to the state agency medical consultant. (R. 19).

capacity to perform light work.  The problem with this determination is two-fold.  First, Social Security Ruling 83-10 when discussing light work states that

> [s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, *for a total of approximately 6 hours of an 8-hour workday*. Sitting may occur intermittently during the remaining time.

SSR 83-10.  Second, the State Agency Medical Consultant indicated that Baker could not stand for more than 2 hours in an 8 hour day and concluded that she was capable of only sedentary work.  (R. 231).

Although the ALJ places great weight on the consultant's assessment and relies upon it to determine Baker's residual functional capacity, the ALJ fails to reconcile the internal inconsistencies in the consultant's assessment. Despite the state consultant's assessment that Baker "is not expected to stand for more than 2 hours in an 8 hour day, [and] . . . is given a SRFC," (R. 231), the ALJ relied on the consultant's assessment that she could "stand/walk about 6 hours during an 8 hour workday." (R. 19).  At a minimum, there exists a conflict or ambiguity in the evidence regarding Baker's abilities to stand and sit.  When there is a conflict, inconsistency or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why she accepted or rejected one opinion regarding the plaintiff's capacity for work over another.  When the ALJ determined that Baker could perform light work, which included standing or walking for approximately 6 hours in an 8 hour day, she ignored the conflicting evidence in the same report that suggests Baker may not be able to stand or walk for more than two (2) hours.

6

Moreover, she ignores the consultant's opinion that Baker could only perform sedentary work. An ALJ may not arbitrarily pick and choose facts from the medical evidence to support her conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury*, *supra*. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Cowart*, 662 F.2d at 735. "Failure to do so requires the case be vacated and remanded for the proper consideration." *Hudson v. Heckler,* 755 F.2d 781, 785 (11th Cir. 1985). Consequently, the court is unable to determine whether the ALJ's decision is supported by substantial evidence.

**B. Daily Activities to Discredit Plaintiff**. The plaintiff also argues that the ALJ failed to properly consider her daily activities when discrediting her testimony. The ALJ concluded that Baker was less than credible because

> the claimant performs ordinary household chores around her house. The claimant cooks, cleans around the house, washes dishes and does laundry. The claimant drives and shops for clothes and food at stores. The claimant walks for exercise. The claimant takes care of her elderly father with help from her son. The undersigned finds the claimant's activities of daily living are more robust, and therefore, inconsistent with the limitations one would expect from an individual who is disabled. The claimant's activities of daily living are more consistent with the residual functional capacity described above. *In addition, the claimant alleged that she was unable to afford medical treatment; however, there is no evidence that the claimant was unable to obtain medical treatment through low cost or no costs alternatives that are available in the community*.

(R. 19) (emphasis added). The ALJ discredited the plaintiff because she failed to seek

medical care.  In this regard, she erred as a matter of law.[5]  The record is replete with references to Baker's inability to afford treatment.  (R.33, 125, 127, 133, 148, 222.)  When discounting the plaintiff's testimony for non-compliance, the ALJ is obligated to follow Social Security Ruling 82-59.  A review of Social Security Ruling 82-59 clearly demonstrates that the ALJ failed to meet her burdens as set forth in the Ruling.

> The claimant or beneficiary should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment.  Detailed questioning may be needed to identify and clarify the essential factors of refusal. . . . Individuals should be asked to describe whether they understand the nature of the treatment and the probable course of the medical condition (prognosis) with and without the treatment prescribed. . . . They should be made aware that the information supplied will be used in deciding the disability claim and that, because of the requirements of the law, continued failure to follow prescribed treatment without good reason can result in denial or termination of benefits.

*Social Security Ruling*, 82-59 (Aug. 20, 1980).

More importantly, "before a determination is made, the individual . . . will be made informed of this fact [that the claimant does not have a good reason for failing to follow treatment] and of its effect on eligibility for benefits." *Id.*  The Commissioner is required to

---

[5] Aside from the ALJ's error in failing to address correctly how the plaintiff's poverty imperiled her ability to obtain medical care, the ALJ blatantly misrepresents the plaintiff's activities of daily living.  As shown above in the quotation from the body of the ALJ's opinion, the ALJ characterized those activities as "robust."  At the hearing the plaintiff testified she spends a normal day "sitting down . . . or I'll try to, you know, clean up the house or, you know, do little activities around the house when I'm not hurting . . ." (R. 34)  When the plaintiff described her daily activities in the physical activities questionnaire, she said, [With every chore I stop, start and sit down then I start again.  I try to walk down my street to get some exercise it takes me 30 min.  Driving I have my good days and bads - yard work I can't do at all." (R. 128)  In response to a question about difficulties in completing routing or familiar tasks, the plaintiff said, "With my . . . tasks it's a challenge Because I get up to do things within 2 to 3 minutes I have to sit down Because the pain . . ."  *Id.*  Suffice it to say that the ALJ's understanding of what is robust is hardly supported by this evidence.

give the individual "an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so." *Id.*  It is clear from the record that, at no time, did the Commissioner or ALJ explain to the plaintiff the effect of her failure to follow prescribed treatment or give the plaintiff the opportunity to show justifiable cause for her failure to follow treatment.  The ALJ did not inquire into the availability of free or subsidized sources of treatment.  She did not ask about the plaintiff's efforts to secure such treatment and she did not delve into Baker's financial condition.  The ALJ simply assumes that these resources are available.  Moreover, she also assumes that these resources could provide the medical treatment required by the plaintiff.  While failure to seek treatment is a legitimate basis to discredit the testimony of a claimant, it is the law in this circuit that poverty excuses non-compliance with prescribed medical treatment or the failure to seek treatment.  *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988).

For the reasons as stated, the court concludes that the ALJ erred as a matter of law when she failed to develop the record with regard to whether relevant free community resources exist as required under SSR 82-59, and when she discredited the plaintiff's testimony for failing to secure treatment without first inquiring into whether good cause exists to justify Baker's alleged non-compliance.  The ALJ retains the responsibility of fully and fairly developing the record.  Because the ALJ failed to fully explore the plaintiff's failure to follow prescribed treatment, this case is due to be remanded.

**C. Hypertension**.  Finally, the ALJ determined that Baker's hypertension was a non-

severe impairment because Baker "does not seek medical care for this impairment and she does not take medication for this impairment." (R. 16). The ALJ is simply wrong. The plaintiff has a well-documented history of hypertension. She was initially diagnosed with high blood pressure on February 11, 2000 at which time her blood pressure was recorded at 170/108. (R. 184). When repeated, her blood pressure remained elevated at 170/112. (R. 185). Although Baker was placed on medication, since that time, her blood pressure has consistently been high. On March 24, 2000, her blood pressure was 150/100. (R. 183). On May 5, 2000, it was 160/108. (R. 182). On May 22, 2000, it was 150/98. (R. 181). In 2001, her blood pressure was recorded at 140/94. (R. 178). But in 2002, it fluctuated between a low of 128/100 (R. 126) and a high of 140/110. (R. 173). In 2003, her blood pressure began to climb. It was recorded at 148/88 in July and August. There are no measurements in 2004. On February 7, 2005, her blood pressure was 160/100, (R. 162). In May, 2005, it was at 170/110. (R. 161). From 2006 until 2009, her blood pressure was elevated each time it was taken. On August 18, 2006, it was 150/96. (R. 259). On June 6, 2007, it was 150/80. (R. 206). On March 3, 2008, her blood pressure was 174/102, and at that time, she informed the doctor that she had no funds and had lost her insurance. (R. 222). It was 176/103 on May 13, 2008. (R. 234). On January 5, 2009, her blood pressure was 174/96. The last reading on November 3, 2009 was 151/93. (R. 293). Baker specifically noted on her pain questionnaire that she could not get her blood pressure medication because she was uninsured and unable to afford the medication. (R. 127, 133).

The court concludes that the ALJ's determination that Baker's hypertension was non severe due to her failure to seek treatment is not supported by substantial evidence for two reasons. First, the record clearly demonstrates that Baker did seek medical treatment and that her hypertension remained uncontrolled even with medication. Second, the ALJ failed to consider Baker's poverty when she considered this impairment. *See Dawkins, supra.* The court concludes that the ALJ failed in this case to fully and fairly develop the record concerning the severity of the plaintiff's hypertension, and the concomitant effects of that condition on her ability to work.

## V. Conclusion

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). In this regard, the ALJ failed in her duty to develop the record.

> The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking. It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad. *Id*. The regulations also make the nature of the SSA proceedings quite clear. They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner." 20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000). Based on the inadequate development of the record, the court cannot determine whether the ALJ's conclusion that the plaintiff is not disabled is based on substantial evidence. Accordingly, the decision of the

Commissioner will be reversed and this case remanded to the Commissioner for further proceedings consistent with this opinion.

A separate final judgment will be entered.

It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after he receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

Done this 2nd day of February 2012.

                                                 /s/Charles S. Coody
                                               CHARLES S. COODY
                                               UNITED STATES MAGISTRATE JUDGE